UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TAURUS B.,**[1]

    **Plaintiff,**

    v.

    Case No. 3:20-cv-0438
    Magistrate Judge Norah McCann King

**COMMISSIONER OF SOCIAL SECURITY,**[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Taurus B. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 15, *Defendant's Memorandum in Opposition*, ECF No. 17, *Plaintiff's Reply*, ECF No. 18, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I.      PROCEDURAL HISTORY

On June 29, 2015, Plaintiff filed his application for benefits, alleging that he has been disabled since January 1, 2012. R.293–98.[3] The application was denied initially and on reconsideration, and Plaintiff requested a *de novo* hearing before an administrative law judge.  R. 158–60. Administrative Law Judge ("ALJ") Belinda Brown first held a hearing, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 64–90. Following that hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the date on which the application was filed through the date of that decision. R.118–35. However, the Appeals Council vacated that decision and remanded the matter to the ALJ with directions to permit oral argument and to further evaluate medical evidence. R. 136–40. The ALJ held another hearing on August 26, 2019, at which Plaintiff, who was again represented by counsel, testified; also testifying at that hearing were a medical expert, Lee Fischer, M.D., and a vocational expert. R. 30–63. In a decision dated November 27, 2019, the ALJ concluded that Plaintiff had not been under a disability at any time since the date on which the application for benefits was filed through the date of that decision. R. 9–29. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 10, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 2. On March 22, 2022, the case was reassigned to the undersigned. ECF No.19. The matter is now ripe for disposition.

---

[3] References to pages in the Certified Administrative Record will be cited as "R. __."

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for social security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other co8ntexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Moreover, "'[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

"Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

B.  **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 40 years old on the date on which the application was filed. R. 20. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 15.

At step two, the ALJ found that Plaintiff's depression and anxiety are severe impairments. *Id*. The ALJ also found that Plaintiff's diabetes mellitus, gastroparesis, spondylosis of the lumbar spine, and asthma are not severe impairments because they cause no more than minimal work-related difficulties and are controlled with medication. *Id*. However, the ALJ stated that she "evaluated the aforementioned non-severe impairments in combination with the claimant's severe impairments in determining the claimant's" RFC. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of

impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a work at all exertional levels, but with certain non-exertional limitations:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to perform simple, routine tasks and make simple work-related decisions. He can never interact with the public. He is permitted to be off-task, ten percent of the time, in addition to regular breaks, in an eight-hour workday.

R. 17. The ALJ also found that Plaintiff had no past relevant work. R. 20.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs—*e.g.*, jobs as a packager, laundry laborer, and sorter—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from the application date through the date of the administrative decision. *Id.*

Plaintiff disagrees with the ALJ's findings at steps two and four, arguing that the ALJ erred in failing to find a severe physical impairment and failing to incorporate a physical limitation in the RFC determination, and in evaluating the medical evidence. He asks that the decision be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 17.

IV.     **RELEVANT EVIDENCE AND DISCUSSION**

Because the Court concludes that the ALJ's consideration of Plaintiff's documented gastroparesis is not supported by substantial evidence, the Court will address only the evidence relating to that condition. Plaintiff was first diagnosed with gastroparesis in 2001, R. 458, and has undergone treatment for the condition since that time, including prescribed medication and treatment with botox. *See, e.g.*, R. 448. Associated symptoms include vomiting and weight loss. R. 462. In September 2015, Kurt Jacobs, D.O., performed a consultative physical examination of Plaintiff at the request of the state agency. R. 555–59. During that examination, Plaintiff reported, *inter alia*, abdominal pain, nausea, vomiting, constipation, diarrhea, and dysphagia, with a 50-pound weight loss over an 18-month period and multiple hospitalizations for vomiting. R. 556. Dr. Jacobs diagnosed "gastroparesis secondary to diabetes; it will probably not improve with time." R. 557. That same month, John M. Wo, M.D., the Director of Motility Center at Indiana University Health, reported to Plaintiff's treating providers at Reid Health Physician Associates that Plaintiff's vomiting had persisted despite medication, although his weight had stabilized. R. 576. Treatment notes from Reid Health Physician Associates reflect continuing complaints of "intractable nausea and vomiting" throughout 2016. *See, e.g.*, 868, 874, 877, 892. In August 2017, an upper GI panendoscope with esophageal biopsy and dilation performed in connection with recurrent ulcer pain and dyspepsia documented a hiatal hernia and chronic esophagitis. R.1393, 1396. Treatment notes from December 2017 characterized Plaintiff's gastroparesis with "intractable nausea and vomiting" as his "most significant issue that he is dealing with." R. 1469. In August 2018, Mark S. Vosler, D.O., one of Plaintiff's treating providers, stated that Plaintiff "suffers from pain, weakness, weight loss, vomiting" and opined that Plaintiff "is unable to sustain employment." R.1691. Notes from an office visit in October

2018 include complaints of abdominal pain, nausea, and vomiting. R 1733. Treatment notes throughout 2019 continued to refer to gastroparesia and nausea for which medication was prescribed. R. 1725, 1728.

Plaintiff testified at the first administrative hearing that he is "subject to be vomiting or subject to be using the bathroom." R. 70. He can last no more than one to two hours without experiencing nausea, vomiting, or diarrhea. R. 71. The condition also causes "fatigue and the restlessness and aching…." R. 72.

Dr. Fischer testified as a medical expert at the second administrative hearing. According to Dr. Fischer, the record documented a diagnosis of gastroparesis, R. 36, but the condition is not a severe impairment and would not result in any exertional impairments. R. 38.

> He does have gastroparesis with nausea, vomiting, but as I pointed out, his weight has been stable for at least from 2015 through probably 2018 and his albumin is normal. So there's no evidence that even if he has reported that he has nausea and vomiting, he's certainly able to absorb nutrients and maintain his weight.

R. 39.

Plaintiff testified at the second administrative hearing—after the medical expert had left the hearing—that only showering relieves the nausea and cramping, R. 46; his medication makes him sleepy. R. 48.

In evaluating the medical evidence, the ALJ found that Plaintiff had no exertional limitations. R. 20. In making this finding, the ALJ credited Dr. Fischer's opinion that Plaintiff had no physical severe impairments, and the ALJ explained that medical experts such as Dr. Fischer have "applicable medical specialties and specialized knowledge of the Social Security disability program." *Id*. The ALJ gave little credit to the opinion of consultative examiner Dr. Jacobs, who had opined that Plaintiff's gastroparesis "will probably not improve with time," R.

557, concluding that the doctor's findings on clinical examination did not support his opinion. R. 20. The ALJ also gave little credit to the opinion of Dr. Vosler, who was one of Plaintiff's treating physicians and who stated that Plaintiff could not sustain employment because of his medical condition, because it was inconsistent with the testimony of Dr. Fischer, who had "examined the claimant's records, as a whole." R. 20.

As noted above, the ALJ found that Plaintiff's gastroparesis "has not caused more than minimal work-related difficulties, and has been controlled with medication." R. 15. However, the evidence cited by the ALJ in support of this finding, *id*. ("Ex.38F/1"), is a treatment note from October 2018, which actually refers to "gastroparesis which has been an issue for many years now", R. 1732, and which observes that medication "seems to help …but [he] still is unable to tolerate a substantial diet most days…." *Id*. The treating doctor's review of systems during that visit was positive for abdominal pain, nausea and vomiting. R. 1733.

At step two, an ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c); SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). The United States Court of Appeals for the Sixth Circuit has held that an impairment is not severe only if it is "a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The record in this case is replete with evidence that Plaintiff's gastroparesis causes at least nausea and vomiting. Even the testifying medical expert acknowledged that fact and appears to have based his opinion of non-severity on only the fact that Plaintiff's weight had stabilized in recent years. R. 39. This Court therefore concludes that the ALJ erred in failing to include Plaintiff's gastroparesis in his severe impairments at step 2 of the sequential evaluation.

However, where the ALJ has found at least one severe impairment, the sequential analysis will continue and the failure to include other severe impairments is not itself reversible error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In the case presently before the Court, the ALJ found that Plaintiff suffers severe mental impairments, although those impairments do not result in any exertional limitations. R. 15. The ALJ's failure to include Plaintiff's established gastroparesis as a severe impairment at step 2 is therefore "legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008), so long as the ALJ continued the sequential analysis and considered both severe and non-severe impairments in determining Plaintiff's RFC. *See id*. The ALJ purported to have done so. R. 15 ("The undersigned evaluated the aforementioned non-severe impairments in combination with the claimant's severe impairments in determining the claimant's residual functional capacity consistent with 20 CFR 416.945 and 404.1545.").

However, the ALJ's RFC determination fails to consider some of Plaintiff's alleged symptoms and is, in some respects, based on inconsistent or illogical reasoning. For example, the ALJ stated that she "accounted for sleepiness in the above residual functional capacity by allowing ten percent off-task in addition to normal breaks," R. 19, a finding that does not take into account Plaintiff's complaints of near-constant nausea and vomiting, which all medical providers—including the testifying medical expert—recognized and acknowledged. The ALJ also discounted Plaintiff's complaints of pain and gastric distress to the extent that they are inconsistent with the objective medical and other evidence. R. 18. In this regard, the ALJ noted that Plaintiff's mother had reported that Plaintiff "waters the plants, takes out the trash, cleans the dishes, makes the bed, picks up clothes, and wipes the mirrors" and can perform light chores "depending on how he feels." *Id*. In the opinion of this Court, however, "these somewhat

minimal daily functions are not comparable to typical work activities." *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). The ALJ also discounted—somewhat illogically—Plaintiff's subjective complaints of pain and other symptoms because those complaints were inconsistent with evidence regarding Plaintiff's mental functioning. R. 18–19. Finally, and in a finding that was both illogical and inconsistent with the actual RFC for a full range of work at all exertional levels, the ALJ stated that her RFC determination accommodated Plaintiff's allegation that eating or drinking anything aggravates his symptoms "by limited him range [sic] of medium exertional level work with mental limitations and limiting his interaction with the public." R. 19.

In short, the ALJ's failure to include Plaintiff's documented gastroparesis among his severe impairments at step 2 of the sequential evaluation was not harmless and warrants remand of the matter for further consideration of this issue.

### V. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date: April 5, 2022                    *s/Norah McCann King*
                                      NORAH McCANN KING
                                      UNITED STATES MAGISTRATE JUDGE